IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL MOTORS, INC.,
   *Plaintiff*,

v.

UNIVERSAL WARRANTY
CORPORATION,
   *Defendant*.

Civil No. ELH-19-00052

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a motion to compel arbitration with respect to a suit initiated by plaintiff National Motors, Inc. ("National"), against Universal Warranty Corporation ("Universal"). ECF 1-1 ("Complaint").[1] National is a Maryland corporation engaged in the business of buying and selling used cars. Universal is a Michigan corporation engaged in the finance and warranty of motor vehicles. ECF 1-1 at 14-18.

This suit is rooted in a contract between the parties dated April 2, 2012 (ECF 1-1 at 19-20), called "Universal Advantage Agreement" (the "Agreement"). It concerns a sales incentive program offered by Universal, by which National was to sell Universal's vehicle service contracts in exchange for payment of commissions. ECF 1-1. According to National, Universal did not pay the commissions due under the Agreement.

---

[1] Suit was filed in the Circuit Court for Howard County on November 5, 2018. ECF 1-1. Universal removed the case to federal court on January 7, 2019, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF 1 ("Notice of Removal"). Jurisdiction is founded on diversity of citizenship. ECF 1, ¶ 1; 28 U.S.C. § 1332(a)(1) (federal district courts have subject matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state . . . .").

The Complaint contains three counts. Count I is titled "Action for Accounting and Injunctive Relief." *Id.* ¶¶ 8-12. Count II alleges breach of contract. *Id.* ¶¶ 13-17. In Count III, plaintiff lodges a claim for "Unjust Enrichment." *Id.* ¶¶ 18-21.

Universal has moved to compel arbitration and to dismiss the suit (ECF 15), supported by a memorandum of law. ECF 15-1 (collectively, the "Motion"). According to Universal, "every claim made in this action is subject to the terms and conditions of an arbitration provision" in the Agreement. ECF 15-1 at 1 (citing ECF 1-1 at 19-20); *see also* ECF 19-1 (same). Plaintiff opposes the Motion. ECF 19. According to National, the arbitration clause is unenforceable because it is unconscionable, *id.* at 5, and because the arbitration clause is "impermissibly vague." *Id.* at 8. Universal has replied (ECF 20), disputing plaintiff's contentions.

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual Background

National buys and sells used cars throughout the State of Maryland. ECF 1-1, ¶ 1; *see* ECF 19-2 (Affidavit of Gabriela Furdyna), ¶ 4. It maintains its principal place of business in Ellicott City, Maryland. ECF 1-1, ¶ 1. Universal provides automotive financial services, including vehicle financing and warranties. *Id.* ¶ 2. Its principal place of business is located in Detroit. *Id.*

On April 2, 2012, Tom Hanlon, a salesperson from Universal, and Mark Brownhill, a representative from Ally Financial ("Ally"), which owns and operates Universal, met with Ms. Furdyna, a manager of National, at National's headquarters. ECF 19-2, ¶ 5. Mr. Hanlon and Mr. Brownhill proposed that National enroll in the Universal Advantage Program (the "Program"). *Id.* In general terms, under the Program, National would sell Universal's products, namely vehicle

2

service contracts ("Qualifying VSCs"), in exchange for a commission and/or payment on those sales. ECF 1-1, ¶ 5.

According to Ms. Furdyna, Mr. Hanlon and Mr. Brownhill represented that there were no drawbacks to joining the Program, and they averred that National would receive payments within a year of joining. ECF 19-2, ¶ 7. Further, they allegedly advised that participating in the Program would improve National's relationship with Ally, which is a major creditor in the automotive sales industry. *Id.* ¶¶ 6, 7.

Based on these representations, National and Universal executed the Agreement on April 2, 2012. ECF 1-1, ¶ 5; ECF 19-2, ¶ 11; *see also* ECF 1-1 at 19-20. The Agreement contains seven sections. Relevant here, Section IV provides, ECF 1-1 at 20:

### IV. ARBITRATION

> If either party fails to agree with respect to this Program, such differences shall be submitted to arbitration upon the request of either party. Each party shall then nominate a competent and disinterested arbitrator within thirty (30) days of being requested to do so and the two named shall select a competent and disinterested umpire before entering into arbitration. In the event that either party fails to appoint a competent and disinterested arbitrator within the time specified, the other party shall have the right to appoint said arbitrator. If the arbitrators do not agree as to a competent and disinterested umpire within thirty (30) days of this appointment, a third arbitrator shall be chosen by the manager of the American Arbitration Association. The said arbitrators shall not be under the control of either party to this Agreement.
>
> Each party shall submit its case to its arbitrator within thirty (30) days of the appointment or within such period as may be agreed by consent of both arbitrators.
>
> The decision in writing of any two of these three, when filed with both parties, shall be final and binding. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear the expense of the umpire and of the arbitration. Any arbitration shall take place in the State of Nebraska unless otherwise mutually agreed.

Further, Section V contains a choice of law provision. *Id.* at 20. It states: "The parties expressly agree that this Agreement is to be interpreted and the right of the parties governed and enforced by the substantive law of the State of Nebraska." *Id.*

National alleges that, following execution of the Agreement, it sold Qualifying VSCs to customers. ECF 1-1, ¶ 6. However, according to National, it has not received payment for these sales, as provided by the Agreement. *Id.* ¶ 7. Further, Universal allegedly failed to furnish information or reports as to National's performance under the Program, despite such requests. *See id.* ¶¶ 8-11.

This lawsuit followed. Additional facts are included in the Discussion.

## II. Legal Standards

### A. The Federal Arbitration Act

Universal moves to compel arbitration and to dismiss this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* The FAA, which was enacted in 1925, "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, ___ U.S. ___, 139 S. Ct. 1407, 1412 (2019); *see also McCormick v. Am. Online, Inc.*, 909 F.3d 677, 679 (4th Cir. 2018) (the FAA "provides for the enforceability of arbitration agreements and specifies procedures for conducting arbitrations and enforcing arbitration awards"). Under § 2 of the FAA, an arbitration contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Thus, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also McCormick*, 909 F.3d at 680 ("[T]he FAA elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration.").

In *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), the Fourth Circuit explained, *id.* at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)):

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

The *Adkins* Court also said, 303 F.3d at 500: "A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Accordingly, a court must "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002).

Nevertheless, there must be an "independent jurisdictional basis" for suit in federal court. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). Of significance here, "diversity jurisdiction would authorize a federal court to resolve disputes concerning the arbitration process. . . ." *McCormick*, 909 F.3d at 681.

Section 3 of the FAA is also relevant. It provides, 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Thus, the Fourth Circuit has said: "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing

5

for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)). Nevertheless, in lieu of a stay, some courts have determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see Willcock v. My Goodness! Games, Inc.*, PWG-16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Kabba v. Ctr.*, PWG-17-211, 2017 WL 1508829, at *2 (D. Md. Apr. 27, 2017) (same), *aff'd*, 730 F. App'x 141 (4th Cir. 2018).

Under 9 U.S.C. § 4, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." Section 4 further provides that, when presented with such a petition, a court

> shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Conversely, § 4 provides that if the "making of the arbitration agreement . . . be in issue," then "the court shall proceed summarily to the trial thereof." *Id*. Thus, § 4 requires the district court, not an arbitrator to "decide whether the parties have formed an agreement to arbitrate." *Berkeley Co. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019); *see Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010) (explaining that dispute over formation of agreement to arbitrate "is generally for court[] to decide"); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002).[2]

---

[2] The Supreme Court has said "that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 529 (2019) (internal quotation marks omitted).

"Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (alteration in *Levin*); *see Berkeley*, 944 F.3d at 236; *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 (4th Cir. 2019). Notably, "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'"); *Adkins*, 303 F.3d at 50.

### B. Rule 12(b)(3)

The Supreme Court has observed that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). In *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006), the Fourth Circuit determined that "a motion to dismiss based on a forum-selection clause," such as an arbitration provision, "should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." The *Sucampo* Court explained, *id* at 548 (internal and external citations omitted) (my alteration):

> [T]reating a motion to dismiss on the basis of a forum-selection clause under Rule 12(b)(1) presents practical difficulties that undercut the benefits gained from enforcement of the clauses. For example, the court must raise the issue of subject-matter jurisdiction *sua sponte*, if necessary. *See* Fed. R. Civ. P. 12(h)(3). Thus, in cases involving forum-selection clauses, both district and circuit courts would be under an obligation to confirm that the clause was not applicable before reaching

7

the merits of the action. . . . More importantly a motion to dismiss under Rule 12(b)(1) is non-waivable and may be brought at any time—even on appeal—regardless of whether a litigant raised the issue in an initial pleading. Litigants, therefore, could hold back forum-selection clause objections, until after discovery—or even an adverse verdict.

Moreover, the Fourth Circuit has recognized that Rule 12(b)(6) "is not the appropriate motion for enforcing a forum-selection clause." *Sucampo*, 471 F.3d at 549. It explained that "because a 12(b)(6) motion may be brought at any time prior to adjudication on the merits, analyzing forum-selection clauses under Rule 12(b)(6) would present some of the same timing concerns as in the 12(b)(1) context." *Id.* (citations omitted). The Court reasoned: "Analyzing forum-selection agreements under Rule 12(b)(3) would avoid the doctrinal and timing disadvantages of utilizing Rule 12(b)(1) or (6) and be consistent with Supreme Court precedent." *Id.* (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998) (finding that motions to dismiss based on forum-selection clause should be analyzed under Rule 12(b)(3) based on the Supreme Court's decision in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988))).

Since *Sucampo*, the Fourth Circuit has reiterated that a challenge based on a forum-selection clause, including an arbitration clause, should be addressed by way of a motion to dismiss for improper venue under Rule 12(b)(3). *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012). Nevertheless, other judges of this court have considered motions to dismiss in favor of arbitration under Rule 12(b)(1) and Rule 12(b)(6). *See, e.g., Willcock*, 2018 WL 3970474, *3 (D. Md. Aug. 20, 2018) (collecting cases); *Garrett v. Monterey Fin. Servs., LLC*, JKB-18-325, 2018 WL 3579856, at *2 (D. Md. July 25, 2018) ("[M]otions to dismiss in connection with a valid arbitration agreement are often brought under Rule 12(b)(6) based on the observation that the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction. . . . However, courts have also found it proper to dismiss claims subject to

arbitration agreements under Rule 12(b)(1)." (citations omitted)); *Lomax v. Weinstock, Friedman & Friedman, P.A.*, CCB-13-1442, 2014 WL 176779, at *2 (D. Md. Jan. 15, 2014) ("Courts have found it proper to dismiss claims subject to arbitration agreements under both Rule 12(b)(1) and Rule 12(b)(6)."), *aff'd*, 583 F. App'x 100 (4th Cir. 2014).

In light of the Fourth Circuit's guidance in *Sucampo*, I shall construe defendant's motion to dismiss as one brought under Rule 12(b)(3). *See, e.g., Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, DKC-13-0560, 958 F. Supp. 2d 609, 612 (D. Md. 2013) (considering a motion to dismiss based on a forum selection clause pursuant to Rule 12(b)(3)); *Enter. Info. Mgmt., Inc. v. SuperLetter.com, Inc.*, DKC-13-2131, 2013 WL 5964563, at *3 (D. Md. Nov. 7, 2013) (considering a motion to dismiss in favor of arbitration pursuant to Rule 12(b)(3)).

In the Fourth Circuit, when a challenge to venue is raised under Rule 12(b)(3), the plaintiff bears the burden of demonstrating that venue is appropriate. *Bartholomew v. Va. Chiropractors Ass'n,* 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *accord Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2017 WL 52554, at *2 (D. Md. Jan. 3, 2017); *Jones v. Koons Auto. Inc.,* 752 F. Supp. 2d 670, 679 (D. Md. 2010). If the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper." *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). "In assessing whether there has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff." *Aggarao*, 675 F.3d at 366. And, the court may "freely consider evidence outside the pleadings . . . ." *Sucampo*, 471 F.3d at 550; *see also Aggarao*, 675 F.3d at 365-56 ("On a motion to dismiss under Rule 12(b)(3), a court is permitted to consider evidence outside the pleadings."); *Taylor v. Shreeji Swami, Inc.*, PWG-16-3787, 2017

WL 1832206, at *1 (D. Md. May 8, 2017) (same); *Convergence Mgmt. Assocs., Inc. v. Callender*, TDC-15-4015, 2016 WL 6662253, at *2 (D. Md. Nov. 10, 2016) (same).

Because "'it is possible for venue to be proper in more than one judicial district,' the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'" *Carefirst*, 235 F. Supp. 3d at 732 (quoting *Mitrano*, 377 F.3d at 405). And, in considering "whether events or omissions are sufficiently substantial to support venue . . . , a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mirtano*, 377 F.3d at 406 (citation omitted). Instead, "it should review 'the entire sequence of events underlying the claim.'" *Id.*; *accord Taylor*, 2017 WL 1832206, at *1; *Callender*, 2016 WL 6662253, at *2.

As indicated, a motion to dismiss for improper venue, filed under Rule 12(b)(3), "allows the court to freely consider evidence outside the pleadings . . . ." *Sucampo*, 471 F.3d at 550. Here, the Court considers the exhibits submitted by the parties: the Agreement (ECF 19-1); an affidavit submitted by Ms. Furdyna, a manager of National (ECF 19-2); and a copy of a record of the Maryland Department of Assessments and Taxation concerning National (ECF 20-1).

### C. Choice of Law

"[I]nterpretation of private contracts is ordinarily a question of state law." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004). Because federal courts exercising diversity jurisdiction "apply the choice of law rules of the forum state," I must consult the choice of law rules of Maryland, the state in which this Court is situated, to determine which state's substantive law applies. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)); *see also*

*Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) ("When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state.").

When a contract contains a choice of law provision, Maryland courts apply § 187(2) of the *Restatement (Second) of Conflict of Laws* (1971) ("Restatement"), which states: "The law of the state chosen by the parties to govern their contractual rights will be applied." *See Ace American Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 704 (D. Md. 2008) (applying Restatement § 187(2)). Notwithstanding this general rule, "[i]n Maryland, choice of law provisions in contracts are enforceable unless the choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy difference in the laws of another jurisdiction with a more substantial interest in the parties or the transaction." *United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp.*, 235 F. Supp. 3d 745, 752 n.9 (D. Md. 2016) (citing *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 921 A.2d 799, 803-05 (2011)); *see Restatement* § 187.

As noted, Section V of the Agreement provides that Nebraska law governs the terms of the Agreement. ECF 1-1 at 20. Both parties appear to agree that Nebraska law controls. Neither contests the validity of the Agreement's choice-of-law provision. Nor does either party dispute that Nebraska law applies. To the contrary, National and Universal both rely on Nebraska case law to support their respective positions. *Compare* ECF 19 at 6-8 (arguing the arbitration clause is unconscionable under Nebraska law), *with* ECF 20 at 3-4 (asserting the Agreement is valid according to Nebraska law). Therefore, the Court will apply Nebraska law to determine the

enforceability of the arbitration provision.  *See Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd*., 944 F.3d 225, 236 (4th Cir. 2019) (applying state law agreed upon by parties in deciding arbitration issues); *Galloway v. Santander Consumer USA, Inc*., 819 F.3d 79, 85 (4th Cir. 2016) (same).

### III. Discussion

Universal moves to enforce arbitration and dismiss this matter, arguing that the arbitration clause in the Agreement is valid and that National's claims fall within the provision.  ECF 15-1 at 4-8.  National does not dispute the validity of the Agreement generally.  *See* ECF 1-1 (seeking to enforce the Agreement).  However, National argues that the arbitration clause is unenforceable for two independent reasons.  First, it maintains that the "arbitration clause is unconscionable due to the inequitable positions of the parties and the provision that the arbitration take place in Nebraska."  ECF 19 at 4-5.  Second, it contends that the "arbitration clause is impermissibly vague as to the scope of issues referable to arbitration."  *Id.* at 5.

I address each contention, in turn.

#### A. Unconscionability

As noted, § 2 of the FAA provides that the terms of a written arbitration agreement "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*."  9 U.S.C. § 2 (emphasis added).  This savings clause "reflects the fundamental principle that arbitration is a matter of contract."  *Lorenzo v. Prime Comc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015) (internal quotation marks omitted).  Thus, like other contract provisions, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) ("The FAA preserves state law contract

defenses unless such defenses 'rely on the uniqueness of an agreement to arbitrate' and are applied 'in a fashion that disfavors arbitration.'") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

"In Nebraska a contract will be enforced by [a] court so long as it is not unconscionable." *Jones v. Burr*, 223 Neb. 291, 296, 389 N.W.2d 289, 293 (1986). Under Nebraska law, "[t]he unconscionability of a contract provision presents a question of law." *Myers v. Neb. Invest. Council*, 272 Neb. 669, 692, 724 N.W.2d 776, 799 (2006). As the Nebraska Supreme Court has explained, the term "'unconscionable' means manifestly unfair or inequitable." *Id.* (citing *Weber v. Weber*, 200 Neb. 659, 668, 265 N.W.2d 436, 442 (1978)); *see EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 566 (8th Cir. 2007). "In a commercial setting," a contract is unconscionable and therefore unenforceable only if it is both substantively and procedurally unconscionable. *Myers*, 272 Neb. at 693, 724 N.W.2d at 799.

"'Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh[.]'" *Fricke v. Wolken*, 22 Neb.App. 587, 597, 858 N.W.2d 249, 258 (2014) (quoting *Adams v. Am. Cyanamid Co.*, 1 Neb.App. 337, 356, 498 N.W.2d 577, 590 (1992)). A contract is substantively unconscionable when "the terms are grossly unfair under the circumstances that existed when the parties entered into the contract." *Myers*, 272 Neb. at 692, 724 N.W.2d at 799 (citing *Adams*, 1 Neb.App. at 356, 498 N.W.2d at 590).

In contrast to substantive unconscionability, "'procedural unconscionability relates to impropriety during the process of forming a contract.'" *Fricke*, 22 Neb.App. at 597, 858 N.W.2d at 258 (quoting *Adams*, 1 Neb.App. at 356, 498 N.W.2d at 590). Procedural unconscionability "'is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand

13

the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print.'" *Adams*, 1 Neb.App. at 358, 498 N.W.2d at 590 (quoting *Am. Nursery v. Indian Wells*, 115 Wash.2d 217, 222, 797 P.2d 477, 481 (1990)); s*ee also Parizek v. Roncalli Catholic High Sch.*, 11 Neb.App. 482, 486 655 N. W.2d 404, 408 (2002). Although no single factor is dispositive, *Adams*, 1 Neb.App. at 358, 498 N.W.2d at 590, the respective bargaining positions of the parties is an "essential fact" in determining whether a contract is procedurally unconscionable. *Myers*, 272 Neb. at 692, 724 N.W.2d at 799 (citing *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997)). That said, the Nebraska Supreme Court has cautioned that courts should be "reluctant to rewrite contracts between parties experienced in business, as opposed to contracts between consumers and skilled corporate parties." *Myers*, 272 Neb. at 692, 724 N.W.2d at 799. And, it has noted that "adhesion contracts are not automatically unconscionable or void" under Nebraska law. *Kosmicki v. Nebraska*, 264 Neb. 887, 899, 652 N.W.2d 883, 893 (2002).

As indicated, National maintains that the arbitration clause in the Agreement is unenforceable because it is both substantively and procedural unconscionable. ECF 19 at 7-8. The arbitration provision is substantively unconscionable, according to National, because "the cost of arbitration in Nebraska will be disproportionately felt by Plaintiff and will be extremely burdensome to its small business." *Id.* at 7. And, National argues that the provision is procedurally unconscionable due to the parties' unequal bargaining power; the fact that National "had no role in creating [the Agreement] or ability to negotiate"; and, the presence of a representative of Ally at the relevant time, which "induce[d] the inexperienced Ms. Furdnya into an agreement." *Id.*

These arguments are unavailing. National's contention that the Agreement's arbitration clause is substantively unconscionable because it compels National to arbitrate its claims in

14

Nebraska is belied by the language of the provision, which provides that "[a]ny arbitration shall take place in the State of Nebraska *unless otherwise mutually agreed.*" ECF 1-1 at 20 (emphasis added). Thus, although the Agreement establishes Nebraska as the default forum, it does not foreclose the possibility of conducting the arbitration in Maryland. And, Universal remedies National's concern by averring in its Reply that it is "agreeable to conducting the arbitration in Maryland." ECF 20 at 2.

Nor is the arbitration provision procedurally unconscionable. The manner in which the parties entered into the Agreement raises no red flags. National strains to portray itself as a hapless David and National as a towering Goliath, asserting that National is a "small Maryland corporation" while Universal is a "national corporation that . . . does business all over the country, and is owned by one of the largest banks in the country." ECF 19 at 7. But, market presence alone does not evidence an imbalance in bargaining strength. National is a business entity engaged in the buying and selling of used cars. ECF 1-1, ¶ 1. There is no basis to conclude that National was deceived or improperly induced into executing the Agreement, or was otherwise too inexperienced or unsophisticated to comprehend the implications of the arbitration clause in the Agreement. *See Myers*, 272 Neb. at 692, 724 N.W.2d at 799; *see also Intervision Sys. Tech., Inc. v. InterCall, Inc.*, 23 Neb.App. 360, 367-68, 872 N.W.2d 794, 800 (2015) (refusing to find contract unconscionable where "both parties are commercial entities and we have no record of a disparity in bargaining power"). Plaintiff's contention that it was pressured into executing the Agreement is further undermined by the print above the parties' signatures, which states: "DEALER hereby acknowledges that he has not relied on any oral or written representations not provided in this Agreement." ECF 1-1 at 20.

The other factors also counsel against finding the arbitration clause unenforceable. National does not maintain that it lacked an opportunity to read the Agreement. And, although National contends that it did not have the opportunity to consult with counsel before executing the Agreement, there is no indication that National requested time to do so. Likewise, although the Agreement contains some elements of an adhesion contract, there is no evidence that National attempted to negotiate with Universal over its terms. *See Ray Tucker &* Sons, 253 Neb. at 466, 571 N.W.2d at 70. Further, as National acknowledges, the arbitration clause was not buried in fine print. ECF 19 at 7-8. Indeed, the Agreement contains just seven sections and spans only two pages, suggesting that it could have been easily reviewed. *See Intervision Sys. Tech.*, 23 Neb.App. at 368, 872 N.W.2d at 800 (observing that contract that was unambiguous and only four pages long was not unconscionable). And, the arbitration provision is located under the hard-to-miss title, in bold: "**IV. ARBITRATION**." ECF 1-1 at 20 (bold in original).

In sum, nothing in the Agreement itself or in National's characterization of its contract process supports a finding of substantive or procedural unconscionability under Nebraska law.

### B. Vagueness

Because an agreement to arbitrate is "'a matter of contract,'" it is axiomatic that "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). To decide whether the parties agreed to arbitrate a certain matter "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, where parties have agreed to an arbitration clause, courts apply "a presumption of arbitrability," according to which "an order to arbitrate the particular grievance should not be

16

denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am.*, 363 U.S. at 582).

National asserts that the arbitration clause is unenforceable "because it is impermissibly vague as to the scope of issues that must be referred to arbitration." ECF 19 at 8. Specifically, National takes issue with the following language in the Agreement: "If either party fails to agree with respect to this Program, such differences shall be submitted to arbitration upon the request of either party." ECF 1-1 at 20. In its view, "[t]his phrase is entirely unclear as to what issues are covered by the dispute." ECF 19 at 8. To support its position, National argues that it does not disagree with the Program but rather seeks to enforce it. *Id.* Further, National contends that the absence of unequivocal language such as "any" or "all" in the arbitration provision "evidences an intent by the parties not to refer all possible disputes to arbitration." *Id.* at 9.

The arbitration provision is neither ambiguous nor vague. To the contrary, the Agreement's language could hardly be more straightforward. Under the plain language of the arbitration provision, if either party "fails to agree with respect to the Program," those disagreements "shall be submitted to arbitration[.]" ECF 1-1 at 20. That statement aptly describes the situation here, where the parties dispute whether plaintiff is entitled to payments under the Program for selling Qualifying VSCs.

The outcome would remain unchanged even if the Agreement's language was not crystal clear. According to National, the court must deny arbitration because "[i]t cannot be said with positive assurance that . . . th[e] [Agreement's] language . . . provides coverage in arbitration of Plaintiff's claims." ECF 19 at 8 (citing *AT&T Techs.*, 475 U.S. at 650). But, that argument flips the presumption in favor of arbitrability on its head. As the Supreme Court has explained, courts

17

must enforce the FAA and compel arbitration "unless it may be said with positive assurance that the arbitration clause is *not* susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (emphasis added). Put succinctly, the rule is that when in doubt, a court should enforce the arbitration provision.

Plaintiff's textual argument fares no better. Although all-encompassing language like "all" and "any" would be helpful in construing the Agreement, it is not necessary. And, its absence does not warrant cabining the breadth of the arbitration provision. As Universal points out, the arbitration provision contains no exclusions or exceptions. ECF 20 at 5. Thus, the Agreement could be read as reflecting the parties' intention to arbitrate any and all disputes arising under the Program. In light of the FAA's presumption in favor of arbitrability, the absence of unequivocal words does not render the arbitration provision impermissibly vague.

Accordingly, I conclude that the arbitration provision is valid and enforceable.

### C. The Remedy

There is "tension" within the Fourth Circuit regarding whether dismissal or a stay is appropriate when granting a motion to compel arbitration. *Aggaro v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 (4th Cir. 2012). Ordinarily, the "'proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration,'" under Section 3 of the FAA, "'rather than to dismiss outright.'" *Id.* at 376 n.18 (citation omitted). However, Fourth Circuit case law indicates that dismissal, rather than a stay, may be "a proper remedy when *all* of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (emphasis added); *see also Aggaro*, 675 F.3d at 376 n.18 (discussing *Choice Hotels* and status of circuit split as to "whether a district court has discretion to dismiss rather than stay an action subject to arbitration").

As Judge Chasnow noted in *Taylor v. Santander Consumer USA, Inc.*, DKC-15-0442, 2015 WL 5178018, at *7 (D. Md. Sept 3, 2015), despite the "disagreement within the Fourth Circuit as to [whether] dismissal is appropriate, . . . district courts within the Fourth Circuit have continued to find dismissal appropriate." *See, e.g.*, *Willcock*, 2018 WL 3970474, at *5; *Garrett*, 2018 WL 3579856, at *4 ("The FAA requires a district court to stay judicial proceedings involving issues covered by arbitration agreements. Dismissal is also a proper remedy under the circumstances." (citation omitted)); *Bracey v. Lancaster Foods, LLC*, RDB-17-1826, 2018 WL 1570239, at *7 (D. Md. Mar. 30, 2018) ("Having determined that Bracey is bound by the Arbitration claims.") (citing *Choice Hotels*)); *Washington v. Lennar Corp.*, TDC-17-0079, 2018 WL 722418, at *3 (D. Md. Feb. 5, 2018) ("While the FAA further requires only that this Court stay the proceedings pending that arbitration, 'dismissal is prober when all of the issues presented in a lawsuit are arbitrable.' *Choice Hotels* . . . . Here, all of Washington's claims against Lennar are within the scope of the parties' arbitration clause. The Court will thus dismiss Washington's claims.").

Each one of the Complaint's three counts fall within the scope of the Agreement's arbitration clause. Accordingly, I shall dismiss plaintiff's suit.

### IV. Conclusion

For the reasons set forth above, I shall grant Universal's Motion (ECF 15).

An Order follows.

Date: January 3, 2020 /s/
Ellen L. Hollander
United States District Judge